UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON E. DANIELS,

     Applicant,

v.                                   CASE NO. 8:21-cv-2476-SDM-LSG

SECRETARY, Department of Corrections,

     Respondent.

_____/

## **ORDER**

Daniels applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for sexual battery on a child under twelve, sexual battery while in a position of familial or custodial authority, attempted sexual battery while in a position of familial or custodial authority, and lewd or lascivious molestation of a child under twelve. Daniels is imprisoned for life. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 27-2) The respondent concedes that the application is timely but argues that some grounds are unexhausted and procedurally defaulted.

## I. **BACKGROUND**[1]

This case arises from Daniels's sexual abuse of his two children, E.D. and K.D. Daniels and his wife lived with the children in Polk County, Florida from

_____

[1] This summary of the facts derives from the trial transcript. (Respondent's Exhibit 1a)

September 2002 to April 2015.  Daniels began to sexually abuse E.D. when she was three or four years old.  On several occasions over the next few years, Daniels anally raped E.D., rubbed his penis on her vagina, and forced her to perform oral sex on him.  Daniels began to sexually abuse K.D. when she was nine years old.  Over the next four years, he repeatedly touched K.D.'s vagina and forced her to perform oral sex on him.  E.D. did not disclose the abuse because she was "scared" and Daniels had told her that "grownups don't talk about this stuff."  (Respondent's Exhibit 1a at 721)  K.D. kept the abuse secret because Daniels had threatened to "kill" her if she told the truth.  (Respondent's Exhibit 1a at 512)

In March 2015, E.D. ran away from home and went to a friend's house.  The friend's parents called the police, who retrieved E.D. and brought her home.  E.D. initially told the police that a stranger had abducted her while she was walking her dog.  She later claimed that she had run away "because of school."  (Respondent's Exhibit 1a at 492)  E.D. acknowledged at trial that these "stories" were "a cover-up of why [she] ran away."  (Respondent's Exhibit 1a at 492)  Back home, she told her mother that she had run away because Daniels was molesting her.

The mother disclosed the abuse to law enforcement.  At the direction of a detective, she conducted a "controlled call" with Daniels.  (Respondent's Exhibit 1a at 527)  During the call, she asked why Daniels had forced E.D. — his "ten-year-old baby" — to "give [him] a freaking blowjob."  (Respondent's Exhibit 1a at 737)  He responded, "I don't know, man.  I don't know.  I don't know what's wrong with me. I can't even explain it to myself."  (Respondent's Exhibit 1a at 737)  She followed up

by asking, "How long have you been doing this to [E.D.]?" (Respondent's Exhibit 1a at 737) He said, "Just that one time." (Respondent's Exhibit 1a at 737)

E.D. and K.D. underwent forensic interviews with the Polk County Child Protection Team. Both described the abuse in vivid detail. E.D. underwent a physical examination. The nurse practitioner who evaluated her found no "physical abnormalities" but later explained that physical injuries are rare "even when there's penetration." (Respondent's Exhibit 1a at 914)

Daniels was arrested and charged with several crimes related to his sexual abuse of E.D. and K.D. The case went to trial. Daniels testified in his defense and denied sexually abusing his children. The jury found him guilty of the offenses listed above and he received a total sentence of life imprisonment. (Respondent's Exhibit 1 at 138–41, 189–203) The appellate court affirmed the convictions without a written opinion. (Respondent's Exhibit 6) Daniels unsuccessfully sought post-conviction relief under Florida Rule of Criminal Procedure 3.850 and Florida Rule of Appellate Procedure 9.141(d). (Respondent's Exhibits 10, 11, 12, 16, 20, 21) This federal habeas application followed. (Docs. 1, 21)

## II. <u>STANDARD OF REVIEW</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State

court shall not be granted with respect to any claim that
was adjudicated on the merits in State court proceedings
unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of,
> clearly established Federal law, as determined
> by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power
> of a federal habeas court to grant a state prisoner's
> application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under §
> 2254(d)(1), the writ may issue only if one of the following
> two conditions is satisfied — the state court adjudication
> resulted in a decision that (1) "was contrary to . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal
> law, as determined by the Supreme Court of the United
> States."  Under the "contrary to" clause, a federal habeas
> court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable[;] . . . an unreasonable application is different

from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).  "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question . . . ."); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766,

779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

In *per curiam* decisions without written opinions, the state appellate court affirmed Daniels's convictions and affirmed the denial of his Rule 3.850 motion for post-conviction relief. (Respondent's Exhibits 6, 16) The state appellate court's *per curiam* decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the

contrary."), *and Bishop v. Warden*, 726 F.3d 1243, 1255–56 (11th Cir. 2013)

(describing the difference between an "opinion" or "analysis" and a "decision" or

"ruling" and explaining that deference is accorded the state court's "decision" or

"ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is

limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to
> the record that was before the state court that adjudicated
> the claim on the merits.  Section 2254(d)(1) refers, in the
> past tense, to a state-court adjudication that "resulted in" a
> decision that was contrary to, or "involved" an
> unreasonable application of, established law.  This
> backward-looking language requires an examination of the
> state-court decision at the time it was made.  It follows
> that the record under review is limited to the record in
> existence at that same time, *i.e.*, the record before the state
> court.

Daniels bears the burden of overcoming by clear and convincing evidence a

state court's fact determination.  "[A] determination of a factual issue made by a

State court shall be presumed to be correct.  The applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."  28

U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but

not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th

Cir. 2001).

## III. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Daniels claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
>> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances,

the identified acts or omissions were outside the wide range of professionally

competent assistance." 466 U.S. at 690.

Daniels must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment." *Strickland*, 466 U.S. at 691. To meet this burden, Daniels must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Daniels cannot meet his burden by showing that the avenue chosen by counsel

proved unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

*Strickland* cautions that "strategic choices made after thorough investigation of law

and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on

investigation." *Strickland*, 466 U.S. at 690–91.

The *Strickland* standard of review applies to a claim of ineffective assistance of

appellate counsel. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish

such a claim, Daniels must show both that appellate counsel performed deficiently

and that the deficient performance resulted in prejudice. To demonstrate deficient

performance, Daniels must show that appellate counsel's failure to discover a non-

frivolous issue and file a merits brief raising that issue fell outside the range of

professionally acceptable performance. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). To demonstrate prejudice, Daniels must show that a reasonable probability exists that, but for appellate counsel's unreasonable failure to file a merits brief on a particular issue, Daniels would have prevailed on appeal. *Smith*, 528 U.S. at 285–86.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *See Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001). The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

## IV. <u>ISSUES ON POST-CONVICTION REVIEW</u>

<u>Ground One:</u>

Daniels argues that the prosecution violated *Giglio*[2] by failing to correct false testimony by Chester Kwitowski, an expert witness who testified for the defense. (Doc. 21 at 9)  Kwitowski performed a forensic evaluation of the controlled call between Daniels and the victims' mother.  During that call, Daniels admitted that E.D. had performed oral sex on him "one time."  (Respondent's Exhibit 1a at 737) Kwitowski opined that the recording was not "reliable" because the metadata lacked "critical information" — the date the recording was "created," and the date the recording was last modified.  (Respondent's Exhibit 1a at 773–74, 776)  Kwitowski conducted an "auditory evaluation" as well.  (Respondent's Exhibit 1a at 759)  He claimed that the recording contained "too much ambient noise" to determine whether the file had been "altered, edited, [or] spliced."  (Respondent's Exhibit 1a at 758–59)

Shortly after Daniels was convicted, Kwitowski was charged with three counts of perjury for testimony he gave at the trial.  The perjury did not concern his opinions about the controlled call.  Instead, Kwitowski was accused of falsely stating under oath that he had obtained a master's degree in computer science and engineering, that he was a "Cisco Certified Systems Engineer," and that he had a top-secret security clearance.  (Respondent's Exhibit 1e)  Kwitowski ultimately

---

[2] *Giglio v. United States*, 405 U.S. 150 (1972).

pleaded guilty and received a probationary sentence.  (Respondent's Exhibit 1f at 9–11)

Daniels argues that the prosecution violated *Giglio* by "remain[ing] silent and allow[ing] Kwitowski to commit perjury" during trial.  (Doc. 21 at 10–11) According to Daniels, the prosecution knew "before the end of [ ] trial" that Kwitowski had lied under oath about his "credentials."  (Doc. 21 at 11)  Daniels notes that on the last day of trial, law enforcement learned that Kwitowski had never obtained a master's degree and did not hold any Cisco certifications.  (Respondent's Exhibit 1e at 4)  Had the prosecution informed Daniels of Kwitowski's perjury before the end of trial, Daniels allegedly would have sought a continuance and "retain[ed] a new fully qualified expert."  (Doc. 21 at 13)  This expert supposedly would have gone further than Kwitowski and testified that "anomalies" in the recording meant "someone had tampered [with] or manufactured" the call.  (Doc. 21 at 13)

The post-conviction court rejected the *Giglio* claim.  The court explained that Daniels — not the prosecution — "called this particular witness" and that he failed to show "how he was prejudiced by the testimony or how the testimony of another witness would have led to a different outcome."  (Respondent's Exhibit 12 at 198)

The rejection of this claim was reasonable.  *Giglio* error "occurs when the undisclosed evidence demonstrates that the *prosecution's case* included perjured testimony and that the prosecution knew, or should have known, of the perjury." *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (emphasis added).  Kwitowski testified for the defense, not the prosecution.  And his testimony aided Daniels by

casting doubt on the reliability of the controlled call.  The jury never learned that Kwitowski had fabricated his credentials, but no binding authority required the prosecution to disclose that fact before the end of trial.  To the contrary, several courts have held that "*Giglio* appl[ies] only to impeachment information relating to a government witness."  *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999); *see also United States v. Kimley*, 60 F. App'x 369, 371 (3d Cir. 2003) ("[T]here is no requirement that the government must disclose to the defense that material which would allow the defendant to impeach his own witness."); *United States v. Souffront*, 338 F.3d 809, 824 (7th Cir. 2003) (rejecting a *Giglio* claim because "[i]mpeaching the testimony of their own witness is not favorable to the defense" and "does not raise the probability of a different verdict").

Even if a *Giglio* violation occurred, Daniels is entitled to no relief because he cannot show actual prejudice.  When a *Giglio* claim arises on collateral review, a petitioner must establish that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict."  *Rodriguez v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1277, 1302 (11th Cir. 2014).  This requires "more than a reasonable possibility that the error was harmful."  *Davis v. Ayala*, 576 U.S. 257, 268 (2015).  The court must "consider the specific context and circumstances of the trial to determine whether the error contributed to the verdict."  *Al-Amin v. Warden, Ga. Dep't of Corr.*, 932 F.3d 1291, 1301 (11th Cir. 2019).

Daniels argues that Kwitowski's false testimony "was not harmless" because, had he known of the perjury, he would have hired a different expert to "demonstrate

and opine that someone had tampered with the recording." (Doc. 21 at 12) But this assertion is speculative. Daniels has never identified a "new fully qualified expert" who would testify that the recording was "tampered [with] or manufactured." (Doc. 21 at 13) Kwitowski himself did not reach that conclusion. Thus, Daniels's unsupported assertion about the existence of an alternative expert is insufficient to establish actual prejudice.[3] *See Ayala*, 576 U.S. at 268 (under the "actual prejudice" standard, the state should "not be put to the arduous task of re-trying a defendant based on mere speculation that the defendant was prejudiced by trial error"); *St. Claire v. Florida*, No. 2:19-cv-720-JES-MRM, 2022 WL 1912579, at *8 (M.D. Fla. June 3, 2022) (no actual prejudice where petitioner "mere[ly] conjecture[d]" that "he would have been able to present evidence to the jury that would have resulted in his exoneration if the court [had] given him funds for an expert").

**Grounds Two and Six:**

Daniels argues that trial counsel provided ineffective assistance by failing to "investigat[e] Kwitowski's qualifications and discover[ ] that [he] was not qualified to act as a digital forensic expert." (Doc. 21 at 14) Had counsel done so, Daniels allegedly would have hired a different expert who "could have detected that someone

---

[3] Daniels argues that the prosecution violated Florida's discovery rules by failing to disclose Kwitowski's perjury before trial ended. (Doc. 21 at 10) Any alleged discovery violation turns on state law and thus cannot support federal habeas relief. *See Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) ("The writ of habeas corpus was not enacted to enforce state-created rights."); *Brown v. Sec., Fla. Dep't of Corr.*, No. 2:08-cv-447-CEH-DNF, 2011 WL 3875364, at *5 (M.D. Fla. Aug. 31, 2011) (alleged discovery violation under Florida law "cannot establish a federal constitutional violation"). Furthermore, to the extent Daniels raises a prosecutorial misconduct claim separate from the alleged *Giglio* violation, any such claim fails for lack of actual prejudice. *See Hensley v. McGinnis*, 188 F.3d 507 (6th Cir. 1999) ("Prosecutorial misconduct . . . is subject to harmless error review.").

had manufactured the [controlled call] by cutting and splicing snippets from other telephone recordings." (Doc. 21 at 16) Also, Daniels contends that counsel failed to "present an adequate motion for new trial" based on Kwitowski's perjury. (Doc. 21 at 30) Counsel unsuccessfully moved for a new trial on this basis, but Daniels argues that the motion was deficient for (1) not mentioning that the prosecution knew of the perjury before the end of trial and (2) failing to explain "how the testimony of a well-qualified new expert would have differed from Kwitowski's testimony." (Doc. 21 at 30–31) Daniels argues that the allegedly inadequate motion prejudiced him because a different expert could have testified at a re-trial that "someone had manufactured the [controlled call]." (Doc. 21 at 32)

   The post-conviction court rejected these claims for lack of prejudice. According to the court, "any claim that another expert witness would have testified differently and led to a more favorable outcome [was] speculative at best." (Respondent's Exhibit 12 at 198) Likewise, any deficiency in the motion for new trial did not prejudice Daniels because the state "did not commit a *Giglio* violation and such a claim would be meritless." (Respondent's Exhibit 12 at 198)

   The post-conviction court reasonably found no prejudice. "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "counsel's errors [must be] so

serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable."
*Strickland*, 466 U.S. at 687.

Daniels argues that counsel should have retained a different expert to
"establish that someone had manufactured the [controlled call]." (Doc. 21 at 32) As
explained above, however, Daniels has never identified an alternative expert who
could have provided such testimony. Nor has he shown that an alternative expert
"actually reviewed the evidence in his case." *Finch v. Sec'y, Dep't of Corr.*, 643 F.
App'x 848, 852 (11th Cir. 2016). "Without some specificity as to the proposed
expert's testimony, any assertion that an expert would testify consistently with
[Daniels's] claims is mere speculation and does not entitle him to relief." *Finch*, 643
F. App'x at 852. Therefore, the post-conviction court reasonably concluded that
Daniels's allegations were too speculative to establish *Strickland* prejudice. *See, e.g.*,
*Jimenez v. Sec'y, Dep't of Corr.*, No. 8:19-cv-684-MSS-AEP, 2021 WL 5416150, at *9
(M.D. Fla. Nov. 19, 2021) ("[I]n his post-conviction motion, [petitioner] neither
identified an expert who could have testified [favorably to the defense] nor presented
an affidavit or testimony to substantiate that testimony. Because [petitioner's]
ineffective assistance of counsel claim was speculative, the state court did not
unreasonably deny the claim.").

Likewise, Daniels cannot show prejudice from any alleged deficiency in the
motion for new trial. The trial court denied that motion because Daniels had failed
to establish "with any specificity" "how any other witness obtained by counsel for
trial would have testified differently." (Respondent's Exhibit 1 at 155) Daniels still

- 16 -

has not made this showing.  As a result, he cannot demonstrate "a reasonable probability" that he would have received a new trial had counsel taken the steps he identifies.  *Reed*, 767 F.3d at 1261.

**Ground Three:**

Daniels argues that trial counsel rendered ineffective assistance by failing to object to the testimony of the nurse practitioner who examined E.D.  (Doc. 21 at 18) The nurse testified that she found no "physical abnormalities" on E.D. (Respondent's Exhibit 1a at 914)  She stated, however, that her "findings . . . were positive for sexual abuse" based on "[E.D.'s] history."  (Respondent's Exhibit 1a at 912–13)  She explained that the "history" came from E.D.'s mother, who told her that E.D. was the victim of sexual abuse.  (Respondent's Exhibit 1a at 913)  On cross-examination, the nurse admitted that her finding of "positive by history" was "not a medical determination based on [her] physical examination."  (Respondent's Exhibit 1a at 916)  Instead, the finding rested entirely on what she had been "told" about the abuse.  (Respondent's Exhibit 1a at 916)

According to Daniels, counsel should have argued that the nurse improperly "bolster[ed]" and "vouche[d] for" E.D.'s testimony by opining that she was "positive for sexual abuse based on [her] history."  (Doc. 21 at 20)  The post-conviction court rejected this claim.  The court summarized the nurse's testimony and found that she "made no comments about the child's veracity and in no way bolstered the child's testimony."  (Respondent's Exhibit 12 at 67)  Consequently, counsel did not provide ineffective assistance by failing to object.

This ruling was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). The post-conviction court found that any objection to the nurse's testimony would have failed because she "made no comments about the child's veracity and in no way bolstered the child's testimony." (Respondent's Exhibit 12 at 67) "Whether testimony by one witness improperly bolsters the credibility of another witness is an issue of state evidentiary law." *Delmoral v. Sec'y, Dep't of Corr.*, No. 8:18-cv-1257-WFJ-CPT, 2020 WL 7768911, at *10 (M.D. Fla. Dec. 30, 2020). Therefore, the post-conviction court "already has told us how the issue[ ] would have been resolved under Florida state law had [counsel] done what [Daniels] argues he should have done." *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005).

Because the post-conviction court "authoritatively decided as a matter of [Florida] law" that the nurse's testimony was proper, the remainder of the analysis is straightforward. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024). "A lawyer cannot be deficient for failing to raise a meritless claim." *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). As a result, the post-conviction court reasonably concluded that counsel was not deficient for failing to raise Daniels's meritless objection.

**Ground Four:**

Daniels faults trial counsel for "failing to move to dismiss the information or request . . . a favorable jury instruction due to the state's destruction of evidence." (Doc. 21 at 21)  This claim concerns the controlled call between Daniels and his wife.  The detective who supervised the call testified that "[o]nce the [call] was complete," she "plugged the recorder into [her] computer, downloaded [the recording] into a file," "burned [the file] to a disc," and "placed the disc into evidence."  (Respondent's Exhibit 1a at 638)  The detective then deleted the recording from "the recording device."  (Respondent's Exhibit 644)  Eight months later, the detective left the sheriff's office, and "everything that was on [her] computer" — including the recording — was "deleted."  (Respondent's Exhibit 1a at 645)  But the disc remained in evidence and was ultimately played for the jury.

Daniels argues that the state violated his due process rights by destroying "the original audio file" of the controlled call.  (Doc. 21 at 23)  According to Daniels, the "remedy" for this "destruction" was "either dismissal of the information or a special jury instruction that . . . the missing evidence would have been unfavorable to the state."  (Doc. 21 at 25)  Yet counsel did not request either "remedy," a failure that allegedly rendered his performance "deficient."  (Doc. 21 at 25)

The post-conviction court rejected this claim.  The court reasoned that Daniels "failed to show bad faith on the part of law enforcement."  (Respondent's Exhibit 12 at 67)  Therefore, a motion to dismiss "would not have been granted," and no "reasonable probability" existed "that a special instruction would have been given."

(Respondent's Exhibit 12 at 67)  Based on these findings, the court held that counsel did not perform deficiently.

The rejection of this claim was reasonable.  Daniels faults counsel for failing to assert a due process violation based on the loss of "the original audio file" of the call. (Doc. 21 at 23)  To show that "the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense."  *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006).  "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *United States v. Brown*, 9 F.3d 907, 910 (11th Cir. 1993).  If the destroyed evidence was not clearly exculpatory but only "potentially useful," a defendant must show that the government acted in bad faith.  *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988).

The lost evidence in this case was not clearly exculpatory.  To the contrary, Daniels admitted on the controlled call that E.D. had performed oral sex on him "one time."  (Respondent's Exhibit 1a at 737)  At best, the original recording was "potentially useful" because an expert could have examined the recording for evidence of tampering.  *Youngblood*, 488 U.S. at 58.  But Daniels has not established a due process violation because he points to no evidence that law enforcement acted in bad faith.  Daniels contends that the "proper procedure" would have been to "preserve the original audio file on the digital recorder or transfer the original audio

file from the digital recorder directly onto a [ ] disc." (Doc. 21 at 24–25)  Instead, the detective downloaded the audio file from the recorder to her computer, then burned the file onto a disc.  Daniels argues that this "improper action" is "proof of the state's bad faith."  (Doc. 21 at 25)

The contention is meritless.  Even if law enforcement did not follow proper procedure, that failure "can at worst be described as negligent" — and negligence does not equal "bad faith."  *Youngblood*, 488 U.S. at 58; *see also United States v. Gayle*, 608 F. App'x 783, 790 (11th Cir. 2015) (allegation of "gross negligence" insufficient to show "bad faith on the part of the police").  Nothing in the record shows that law enforcement intended "to deprive [Daniels] of evidence expected to play a significant role in his defense."  *Davis v. Sellers*, 940 F.3d 1175, 1189 (11th Cir. 2019).  Nor is there any evidence of "official animus" toward Daniels.  *California v. Trombetta*, 467 U.S. 479, 488 (1984).  Therefore, counsel did not provide ineffective assistance by failing to raise Daniels's meritless due process claim.

## **Ground Five:**

Daniels faults trial counsel for not moving to dismiss the information "after the state refused to narrow the period when the alleged offenses occurred."  (Doc. 21 at 27)  The information alleged that the offenses occurred during long periods.  For example, one count stated that E.D. performed oral sex on Daniels "on one or more occasions" between December 7, 2005 and November 30, 2011.  (Respondent's Exhibit 1 at 27)  Another count charged Daniels with anally raping E.D. "on one or more occasions" between November 1, 2011 and April 18, 2015.  (Respondent's

Exhibit 1 at 28)  Counsel moved for a statement of particulars and argued that the time periods alleged in the information were "overly broad and unfairly prejudic[ial]."  (Respondent's Exhibit 22)  The trial court directed the prosecution to evaluate whether "break[ing] up the charges into more precise and discrete time frames" was feasible.  (Respondent's Exhibit 1 at 306–07)  The prosecution responded in writing that no "additional information" existed "in relation to the charges in the information."  (Respondent's Exhibit 23)

Daniels contends that counsel should have moved to dismiss the information under Florida law.  According to Daniels, a motion to dismiss "would have required the trial court to conduct an evidentiary hearing."  (Doc. 21 at 27)  And if the prosecution failed to show "exhaust[ion] [of] all reasonable means of further narrowing the relevant periods," the court allegedly "would have been required to dismiss the information."  (Doc. 21 at 28)  Daniels argues that because the prosecution could not have met this burden, the court "would have been duty-bound to dismiss."  (Doc. 21 at 29)

The post-conviction court rejected Daniels's ineffective assistance claim.  The court noted that the prosecution "responded to the [request for a statement of particulars] by stating that [it] had no additional information to disclose." (Respondent's Exhibit 12 at 67)  The absence of additional information was confirmed at trial when "the two child victims were unable to give specific time frames but only stated that the incidents occurred at their old house and their new house."  (Respondent's Exhibit 12 at 67)  Based on these facts, the court concluded

that "[h]ad counsel moved to dismiss the information, the motion would have been denied." (Respondent's Exhibit 12 at 67)  Consequently, the failure to file such a motion did not constitute ineffective assistance.

That ruling was reasonable.  Daniels's ineffective assistance claim "turns on [an issue of] state law" — whether the information was specific enough to satisfy the Florida Rules of Criminal Procedure.  *Pinkney*, 876 F.3d at 1295.  The post-conviction court found that a motion to dismiss on this basis "would have been denied." (Respondent's Exhibit 12 at 67)  That determination is binding on federal habeas review.  *See Kennedy v. Crews*, No. 3:12-cv-243-LC-CJK, 2014 WL 1632252, at *23 (N.D. Fla. Mar. 18, 2014) ("[T]his court will not 'second guess' the Florida state courts' conclusion that the information met the requirements of Florida law."), *adopted by* 2014 WL 1613933 (N.D. Fla. Apr. 21, 2014).  Therefore, the post-conviction court reasonably concluded that counsel did not provide ineffective assistance by failing to file a meritless motion.  *See Files v. Tucker*, No. 3:09-cv-490-RV-EMT, 2011 WL 6983135, at *26 (N.D. Fla. Dec. 9, 2011) ("In light of the state court's determination that defense counsel had no meritorious basis for arguing that the information was subject to dismissal as vague or indefinite, petitioner failed to show deficient performance or prejudice."), *adopted by* 2012 WL 83369 (N.D. Fla. Jan. 11, 2012).

**Ground Seven:**

Daniels faults trial counsel for failing to call five witnesses at trial:  Ashley Kinnett, Deputy Jonathan Winters, Jennifer Spence, Nikki Ernst, and David Reece.

(Doc. 21 at 32–33)  According to Daniels, each witness would have "supported [his] theory of defense that [his wife] schemed to have [him] falsely accused" out of "greed and [a] desire for revenge."  (Doc. 21 at 33–34)  For example, Kinnett allegedly would have testified that she and Daniels's wife "celebrated [his] arrest by going out together to a strip club" and spending "a large amount of money."  (Doc. 1 at 85)  Deputy Winters allegedly would have testified that Daniels's wife "did not shed one tear or get upset" when the Department of Children and Families removed E.D. and K.D. from her custody.  (Doc. 1 at 89)  Spence and Ernst allegedly would have described an incident that occurred after a "shelter hearing" for the victims.  (Doc. 1 at 90)  Outside the courtroom, Spence and Ernst overheard K.D. ask her mother "about how Daniels was doing."  (Doc. 1 at 90)  She allegedly told K.D. to "stop crying, just keep telling what we talked about and everything will be fine."  (Doc. 1 at 90)  Finally, Reece allegedly would have testified that he was K.D.'s biological father, that Daniels's wife tricked Daniels into thinking that he (Daniels) was the father by "forg[ing] . . . DNA/paternity test results," and that once Daniels was arrested, she admitted the truth to Reece.  (Doc. 1 at 94)

The post-conviction court held that counsel was not deficient for failing to call these witnesses.  (Respondent's Exhibit 12 at 808, 831)  The court explained that the proposed testimony of each witness was "inadmissible."  (Respondent's Exhibit 12 at 808)  Specifically, Kinnett's testimony was "not relevant," Deputy Winters's testimony "would only serve to attack the character of the mother," Spence and

Ernst's testimony "would constitute inadmissible hearsay," and Reece's testimony "would not be relevant." (Respondent's Exhibit 12 at 808, 831)

The rejection of this claim was reasonable. Daniels's allegation of ineffective assistance "turns on [an issue of] state law" — whether the proposed testimony was admissible under Florida's rules of evidence. *Pinkney*, 876 F.3d at 1295. The post-conviction court "authoritatively decided as a matter of [Florida] law" that the testimony was inadmissible. *Calhoun*, 92 F.4th at 1351. A lawyer cannot be "ineffective for failing to offer inadmissible evidence." *Tompkins v. Moore*, 193 F.3d 1327, 1334 (11th Cir. 1999). Thus, the post-conviction court correctly concluded that counsel was not deficient for failing to present testimony from the proposed witnesses. *See Ward v. Dep't of Corr.*, No. 20-13797-C, 2021 WL 4772143, at *4 (11th Cir. Apr. 20, 2021) ("The state court denied this claim based on its finding that [the proposed witness's] testimony would not have been admissible under Florida law, and the district court correctly found that it should not second-guess such a finding."); *Zeigler v. Sec'y, Dep't of Corr.*, No. 8:17-cv-286-KKM-TGW, 2023 WL 6196862, at *10 (M.D. Fla. Sept. 22, 2023) ("[T]o the extent that the trial court's ruling was based on a determination that the statement was . . . impermissible hearsay under Florida's evidentiary law, this Court must defer to the state court's interpretation of state law.").

**Ground Eight:**

Daniels contends that trial counsel provided ineffective assistance by "delay[ing]" his investigation of the "origins" of the controlled call. (Doc. 21 at 34–

35)  The call occurred in April 2015.  The detective transferred the audio file from the recorder to her computer, burned the file onto a disc, and deleted the file from the recorder.  (Respondent's Exhibit 1a at 638, 644)  Counsel learned in June 2015 that "he could have access to the CD disc that contained the audio file of the recording." (Doc. 21 at 35)  The detective who supervised the call left the sheriff's office in January 2016.  Upon her departure, "everything that was on [her] computer" — including the audio file of the recording — was "deleted."  (Respondent's Exhibit 1a at 645)  Two months later, in March 2016, counsel received the disc from the state and played the recording for Daniels in the county jail.  Daniels told counsel that "someone had tampered with the recording."  (Doc. 1 at 111)  Two weeks later, counsel retained Kwitowski to evaluate the recording for evidence of tampering.

Daniels faults counsel for waiting "more than eight months" to "hire an expert to examine the [disc] to determine if someone had tampered [with] or altered the audio file."  (Doc. 1 at 112)  By this time, Daniels complains, the "original audio files" had been destroyed.  (Doc. 1 at 112–13)  According to Daniels, had counsel "promptly moved to preserve the original audio files," an expert "could have determined that someone had tampered with the audio file[s] . . . to make it appear that [he] had admitted to at least one of the charged offenses."  (Doc. 1 at 113)

The post-conviction court rejected this claim because "counsel did not act deficiently."  (Respondent's Exhibit 12 at 199)  The court reasoned that counsel "could not have known that [the detective] was going to leave and could not have known [whether] the recording was altered prior to receiving it."  (Respondent's

Exhibit 12 at 199)  Because "there [could] be no expectation of either," counsel did

not render ineffective assistance.  (Respondent's Exhibit 12 at 199)

The rejection of this claim was reasonable.  To prevail on his assertion of

ineffective assistance, Daniels must "show that no reasonable jurist could find that

his counsel's performance fell within the wide range of reasonable professional

conduct." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020).  Daniels

cannot meet this burden.  Nothing in the record suggests that counsel knew — or

should have known — that the detective would leave the sheriff's office and that the

audio file would be deleted from her computer upon her departure.  Moreover,

Daniels fails to explain how counsel could have obtained the audio file "from the

digital recorder."  (Doc. 1 at 113)  The detective deleted the file from the recorder

after the call was completed in April 2015, and the prosecution did not disclose the

call to the defense until June 2015.  Therefore, counsel had no reason to question the

"origins" of the recording before Daniels raised the issue in March 2016.  (Doc. 21 at

34–35)

"The [*Strickland*] test has nothing to do with what the best lawyers would have

done.  Nor is the test even what most good lawyers would have done." *White v.

Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992).  "[A] petitioner must establish that

no competent counsel would have taken the action that his counsel did take."

*Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).  Two weeks after

Daniels raised the issue of tampering, counsel retained an expert to conduct a

forensic evaluation.  The expert testified at trial and cast doubt on the reliability of

the recording. In these circumstances, a reasonable jurist could conclude that counsel's conduct did not "amount[ ] to incompetence under prevailing professional norms." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014).

**Ground Nine:**

Daniels argues that the "lengthy time periods alleged in the information" violated his rights to due process and a fair trial. (Doc. 1 at 118, 120) As explained above, the information alleged that the offenses occurred during long periods. For example, one count alleged that E.D. performed oral sex on Daniels "on one or more occasions" between December 7, 2005 and November 30, 2011. (Respondent's Exhibit 1 at 27) Another count charged Daniels with anally raping E.D. "on one or more occasions" between November 1, 2011 and April 18, 2015. (Respondent's Exhibit 1 at 28) According to Daniels, the "charged periods made it impossible for [him] to produce an alibi or other factual defenses that depend[ ] on where a person was at a specific time and place." (Doc. 21 at 37)

The post-conviction court acted reasonably in denying this claim. (Respondent's Exhibit 12 at 67) Daniels cannot show that the rejection of his constitutional challenge was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). Accordingly, "it is not 'an unreasonable application of' 'clearly established Federal

law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

　　"Due process dictates that an [information] afford a defendant notice of the charges so that the defendant can prepare an adequate defense." *United States v. Alvarez-Moreno*, 874 F.2d 1402, 1410 (11th Cir. 1989). But the Supreme Court has never addressed whether a charging document in a child abuse case is constitutionally infirm for alleging broad time frames. *See Leonard v. Perez*, No. 2:12-cv-2161-JKS, 2015 WL 5255357, at *7 (E.D. Cal. Sept. 9, 2015) ("The United States Supreme Court has not determined that [a charging document] in a child sexual abuse case is constitutionally deficient for failure to provide specific dates of incidents."). And "numerous" federal courts "have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005) (collecting cases). These decisions recognize "the inherent difficulties in investigating and prosecuting child abuse." *United States v. Beasley*, 688 F.3d 523, 533 (8th Cir. 2012). Because the Supreme Court has never provided "a clear answer" on

the matter, Daniels cannot prevail on his challenge to the information. *Reese*, 675
F.3d at 1288.

Moreover, a defendant can "prepare a defense adequately even though
allegations spanning a significant time period may preclude presentation of an alibi
defense." *Brodit v. Cambra*, 350 F.3d 985, 988 (9th Cir. 2003). "[C]redibility is
typically the major issue in child abuse cases, with most defendants denying not just
specific incidents on specific dates, but denying that any abuse ever occurred at all."
*Brodit*, 350 F.3d at 988. Consequently, "[d]efendants can take advantage of a variety
of effective defenses even in the absence of specific dates; for example, they can
testify and deny the allegations, advance positive character evidence, develop
evidence of a child's motive to lie, and show alibis for some incidents that, if
credible, could cast doubt on the child's entire account." *Brodit*, 350 F.3d at 988–89.
Daniels used several of these tactics at his trial.

**Ground Ten:**

Before closing argument, the court informed the parties that the jury would
not be instructed on the lesser included offense of simple battery. (Respondent's
Exhibit 1a at 937–38, 945–46) In accord with this ruling, defense counsel did not
mention simple battery during closing argument. (Respondent's Exhibit 1a at 978–
1002) After closing argument (but before the jury instructions), the court changed its
ruling. The court explained that simple battery was a necessary lesser included
offense of sexual battery on a child under twelve. (Respondent's Exhibit 1a at 1019)
Accordingly, the court decided to instruct the jury on simple battery. *See Khianthalat*

*v. State*, 974 So. 2d 359, 362 (Fla. 2008) (holding that "simple battery [is] a

necessarily lesser included offense" of sexual battery on a child under twelve); *Harris

v. State*, 149 So. 3d 1160, 1161 (Fla. 4th DCA 2014) (under Florida law, "[t]rial

judges are required to instruct the jury regarding a necessary lesser included

offense"). The modified instructions were read to the jury.

     Daniels argues that the trial court violated his rights to due process and a fair

trial by changing its ruling on the simple battery instruction. (Doc. 21 at 37)

According to Daniels, the court "denied [his] counsel the ability to argue in closing

argument that the jury should convict [him] of the lesser included offense of [simple]

battery instead of" sexual battery on a child under twelve. (Doc. 1 at 128)

     Even assuming the court erred, Daniels is entitled to no relief because he

cannot show that the error "had substantial and injurious effect or influence in

determining the jury's verdict."[4] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

This case presented a credibility contest between Daniels and the victims. The

victims testified that Daniels sexually abused them over several years. Daniels

denied the allegations, testified that he "absolutely did not" molest the victims, and

claimed that his wife fabricated the abuse to "ruin him financially" and "take his

children away." (Respondent's Exhibit 1a at 460, 818) Had the jury believed

Daniels, an acquittal would have followed. Instead, the jury believed the victims and

convicted Daniels of five counts of sexual battery on a child under twelve.

---

[4] The respondent argues that ground ten is procedurally defaulted, but "a federal court may
skip over the procedural default analysis if a claim would fail on the merits in any event." *Dallas v.
Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020).

Daniels cannot show "more than a reasonable possibility" that the jury would

have found him guilty of simple battery had his counsel argued for that outcome.

*Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1313 (11th Cir. 2012).  Nothing in the

record suggests that Daniels committed simple battery — "the intentional touching

or striking of another person against that person's will" — but not sexual battery.

*Villanueva v. State*, 200 So. 3d 47, 54 n.4 (Fla. 2016).  Daniels did not testify that the

incidents involved physical rather than sexual abuse, and the victims' testimony did

not support a finding of unwanted, non-sexual touching.  Thus, Daniels suffered no

prejudice from counsel's inability to argue simple battery in closing.  *See Otero v. Diaz*,

No. 2:19-cv-381-MCE-KJN, 2020 WL 7406517, at *17 (E.D. Cal. Dec. 17, 2020) (no

actual prejudice from omission of simple battery argument because "if the jury

believed [the victim], petitioner was guilty of sexual penetration; if the jury did not

believe [the victim], petitioner would . . . have been acquitted of the crime"), *adopted

by* 2021 WL 1123291 (E.D. Cal. Mar. 24, 2021).

## Grounds Eleven and Twelve:

Daniels faults trial counsel for failing to move for a mistrial when the trial

court "announced for the first time" after closing argument that the jury would be

instructed on the lesser included offense of simple battery.  (Doc. 21 at 38)  This

instruction applied to the charges for sexual battery on a child under twelve.

According to Daniels, the court "would have been duty-bound to grant the motion,"

and a "reasonable probability exists that a new trial . . . would have resulted in a

more favorable outcome."  (Doc. 21 at 38–39)  Also, Daniels argues that counsel

provided ineffective assistance by failing to request lesser-included-offense instructions for two other charges — lewd or lascivious molestation and sexual battery while in a position of familial or custodial authority.  (Doc. 21 at 39–40)

The post-conviction court correctly rejected these claims for lack of prejudice. (Respondent's Exhibit 12 at 68, 199)  Florida law requires a jury to "render a true verdict according to the law and the evidence."  *Sanders v. State*, 946 So. 2d 953, 958 (Fla. 2006).  Thus, a jury may convict of a lesser offense "only if it decide[s] that the main accusation has not been proved beyond a reasonable doubt."  *Sanders*, 946 So. 2d at 958.  In accord with this principle, the jury in Daniels's case was instructed that if it "return[ed] a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt."  (Respondent's Exhibit 1a at 1052)  The district court must assume that the jury followed this instruction.  *See Strickland*, 466 U.S. at 694 ("[A] court should presume . . . that the judge or jury acted according to law.").  Consequently, "even if the lesser offense instructions had been given, the jury would not have been permitted to convict [Daniels] of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses."  *Crapser v. Sec'y, Dep't of Corr.*, 855 F. App'x 626, 628 (11th Cir. 2021).  Likewise, even if he had been granted a mistrial, Daniels cannot show that he would have been convicted of lesser offenses at a second trial.  *See Escobedo v. Lund*, 760 F.3d 863, 871–72 (8th Cir. 2014) (state court reasonably concluded that petitioner must demonstrate "a reasonable probability the ultimate verdict would have been

- 33 -

different" at a re-trial, not merely "a reasonable probability [a] mistrial would have been granted").

Daniels's claims "depend[ ] . . . on the possibility of a jury pardon — that is, that the jury would have disregarded its oath and violated its instructions by acquitting him of the greater offense and convicting him of a lesser one even though the evidence supported both crimes." *Crapser*, 855 F. App'x at 628. "The possibility of a jury pardon, however, cannot establish prejudice under *Strickland*."[5] *Thornton v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-762-MMH-PDB, 2021 WL 2073685, at *9 (M.D. Fla. May 24, 2021); *see also Santiago v. Sec'y, Fla. Dep't of Corr.*, 472 F. App'x 888, 889 (11th Cir. 2012) ("The jury in [petitioner's] trial concluded that the evidence against him supported his conviction for the greater offenses on which it was instructed; therefore, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [petitioner] of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses.").

**Ground Thirteen:**

---

[5] Daniels argues that he suffered prejudice because trial counsel failed to "preserve the [trial court's] error for appellate review." (Doc. 21 at 39) But *Strickland* prejudice "focuses on the outcome at trial, not on appeal." *Ramos v. Dep't of Corr.*, 575 F. App'x 845, 846 (11th Cir. 2014); *see also Brown v. United States*, 533 F. App'x 881, 883 (11th Cir. 2013) ("Where the prisoner alleges that counsel failed to preserve an issue for appeal, we have rejected the argument that the inquiry into prejudice is whether the appellate panel would have arrived at a different conclusion on direct appeal.").

Daniels contends that the prosecution violated *Brady*[6] by failing to disclose an interview between the Department of Children and Families ("DCF") and Michael Prevatt, the victims' grandfather. (Doc. 21 at 43) Eight months after Daniels was arrested, an "unknown person" accused Prevatt of sexually abusing E.D. and K.D. (Doc. 1 at 149) DCF interviewed Prevatt. The report of the interview states that Prevatt "believe[d] he [was] being accused of sex abuse because he was the one who turned Jason Daniels in. He had the recordings and provided evidence to [law enforcement]." (Doc. 1-6 at 6) The report does not describe the "recordings" or "evidence" that Prevatt allegedly gave to law enforcement.[7]

Daniels contends that the DCF report qualifies as *Brady* material for two reasons. First, the report allegedly "bolsters" his argument that his wife conspired with law enforcement to "cut and splice[ ] portions from several . . . conversations to create a fake" controlled call. (Doc. 21 at 44) Second, the report allegedly "refute[s]" the "false testimony" of Daniels's wife concerning her "role in reporting the . . . sexual abuse" to law enforcement. (Doc. 1 at 151)

Also, Daniels asserts that the prosecution violated *Brady* by failing to disclose the "recordings" and "evidence" that Prevatt allegedly gave to law enforcement. (Doc. 1 at 152–53) As just explained, the record does not clarify the nature of the "recordings" or "evidence." Daniels nonetheless contends that these items (1)

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

[7] Daniels does not claim that Prevatt was responsible for the sexual abuse alleged in the information.

"[c]ast serious doubt [on] the authenticity and origins of the" controlled call and (2) "[u]ndermine the credibility" of his wife.  (Doc. 1 at 152–53)

The *Brady* claim fails even under *de novo* review.[8]  "To prevail on a *Brady* claim, the defendant must establish:  (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice."  *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014).  "The prejudice or materiality requirement is satisfied if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 746 (11th Cir. 2010).  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1316 (11th Cir. 2005).

Daniels fails to establish the existence of any *Brady* material.  The DCF report is not exculpatory.  To the contrary, the report discusses Daniels's sexual abuse of E.D. and K.D. and discloses that, according to K.D., the "only person who ever touched her [sexually] was her father."  (Doc. 1-6 at 4)  Daniels speculates that the "recordings" and "evidence" referenced in the report are exculpatory because they somehow show that his wife conspired with law enforcement to create a "fake"

---

[8] The respondent argues that ground thirteen is procedurally defaulted, but "a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event." *Dallas*, 964 F.3d at 1307.

controlled call.  (Doc. 21 at 44)  But Daniels offers nothing beyond his own speculation to establish the content of Prevatt's "recordings" and "evidence." Speculation about the content of allegedly suppressed evidence is insufficient to establish a *Brady* violation.  *See United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011) ("[Defendant's] argument fails for a second reason:  *Brady* applies only to exculpatory and impeachment evidence, and [defendant's] argument that the report contains exculpatory information is, at best, speculative."); *see also Runningeagle v. Ryan*, 686 F.3d 758, 771 (9th Cir. 2012) ("As [defendant] can only speculate as to what [his co-defendant's former cellmate] told prosecutors, [defendant] cannot demonstrate that [the alleged] statements were exculpatory or useful for impeachment, or that there is a reasonable probability that had [the] statements been disclosed, the outcome of the trial or of the sentencing would have been different.").

Daniels argues that the DCF report "refute[s]" the "false testimony" of his wife concerning her "role in reporting the . . . sexual abuse" to law enforcement. (Doc. 1 at 151)  *Brady* "encompasses impeachment evidence as well as exculpatory evidence."  *Strickler v. Greene*, 527 U.S. 263, 280 (1999).  But any impeachment evidence must be material — that is, Daniels must show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Allen*, 611 F.3d at 746.  The DCF report does not meet this standard.  The alleged inconsistency about who reported Daniels to law enforcement "cannot be characterized as anything but minor."  *United States v. Nash*, 29 F.3d 1195, 1202 (7th Cir. 1994).  Any "incremental impeachment value [Daniels]

would receive from [this] minor inconsistenc[y] . . . does not raise a reasonable probability that, had the [report] been disclosed to [his] counsel, the outcome of the proceeding would have been different."[9]  *Drew v. Collins*, 964 F.2d 411, 419–20 (5th Cir. 1992); *see also United States v. Herrera*, 51 F.4th 1226, 1242 (10th Cir. 2022) ("[E]vidence isn't material when it . . . bears only an insignificant effect on the impeachment evidence.").

## V. <u>DEFAULTED CLAIMS OF TRIAL-LEVEL INEFFECTIVE ASSISTANCE</u>

Daniels correctly concedes that he failed to exhaust several claims of ineffective assistance of trial counsel.  (Doc. 1 at 167, 175–76, 182–83, 209–10, 243–45, 250–52, 261–62, 279–81, 294–96, 308–10, 317–19)  Because these claims are unexhausted, they are barred from federal review absent a showing of "actual cause and prejudice" or a "fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").  The basis for "cause" must ordinarily reside in something external to the defense.  *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "prejudice," the petitioner must establish "not merely that the errors . . . created the

---

[9] Daniels argues that the prosecution violated Florida's discovery rules by failing to disclose the evidence discussed in ground thirteen.  (Doc. 1 at 159)  Any alleged discovery violation turns on state law and thus cannot support federal habeas relief.  *See Cabberiza*, 217 F.3d at 1333 ("The writ of habeas corpus was not enacted to enforce state-created rights."); *Brown*, 2011 WL 3875364, at *5 (alleged discovery violation under Florida law "cannot establish a federal constitutional violation").

*possibility* of prejudice, but that they worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions."

*Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*,

456 U.S. 152, 170 (1982)).  A fundamental miscarriage of justice occurs only if a

constitutional violation has probably resulted in the conviction of someone who is

actually innocent.  *House v. Bell*, 547 U.S. 518, 536–37 (2006).

  Daniels asserts that, under *Martinez v. Ryan*, 566 U.S. 1 (2012), the absence of

post-conviction counsel serves as cause to excuse the procedural defaults.  *Martinez*

holds that a petitioner may establish cause for the default of a claim of ineffective

assistance of trial counsel where (1) "in the initial-review collateral proceeding, there

was no counsel or counsel in that proceeding was ineffective" and (2) the defaulted

claim is a "substantial one," meaning that "the claim has some merit."  *Martinez*, 566

U.S. at 14, 17.  A petitioner shows that his defaulted claim is "substantial" under

*Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether

the petition states a valid claim of the denial of a constitutional right.'"  *Clark v.*

*Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson*, 759

F.3d at 1269–70).

  As explained below, *Martinez* does not excuse the procedural defaults because

the underlying ineffective assistance claims are not "substantial."  *Martinez*, 566 U.S.

at 14.  Therefore, each claim is barred from federal habeas review.

**<u>Ground Fourteen:</u>**

Daniels contends that trial counsel rendered ineffective assistance by failing to

call Daniels's mother to testify. (Doc. 21 at 45–46) Shortly after Daniels's arrest, the

Tenth Judicial Circuit Court held a "shelter hearing"[10] for E.D. and K.D. (Doc. 1 at

162) After the hearing, Daniels's mother allegedly overheard K.D. "asking

[Daniels's wife] about . . . how Daniels was doing." (Doc. 1 at 162) Daniels's wife

told K.D. to "[s]top crying, just keep telling what we talked about and everything

will be fine." (Doc. 1 at 162) Daniels contends that counsel unreasonably failed to

call his mother to testify about this overheard conversation. According to Daniels,

such testimony could have "establishe[d] that [his wife] was manipulating the

testimony of K.D. and E.D. in order to [e]nsure Daniels's conviction." (Doc. 21 at

46)

This claim lacks merit. Daniels cannot "establish a reasonable probability

that, but for [the failure to present his mother's testimony], the outcome at trial

would have been different." *Reed*, 767 F.3d at 1261. First, the overheard

conversation does not "establish[ ] that [Daniels's wife] was manipulating the

testimony of K.D. and E.D." (Doc. 21 at 46) Daniels's wife allegedly told K.D. to

"keep telling what we talked about," but the record does not disclose what the two

had "talked about." (Doc. 1 at 162) Nor does the record reflect what was discussed

during the shelter hearing, a proceeding distinct from Daniels's criminal case.

---

[10] Florida law "permits the removal and placement of a child in shelter care if there is
probable cause to believe that the child has been abused, neglected, or abandoned, or is suffering
from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment."
*Dep't of Child. & Fams. v. H.M.R.*, 161 So. 3d 477, 478 (Fla. 5th DCA 2014).

Daniels speculates that his wife was referring to sexual abuse, but "[s]peculation is insufficient to carry the burden of a habeas corpus petitioner." *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985). And even if Daniels's wife were referring to sexual abuse, her statement does not show that she "manipulat[ed]" the victims into testifying against him. (Doc. 21 at 46) At most, the conversation suggests that she and K.D. discussed the abuse before the hearing — hardly a surprise given the nature of the allegations against Daniels.

Second, even without his mother's testimony, Daniels adequately presented his theory of manipulation to the jury. During her interview with the Child Protection Team, E.D. stated that she was having "nightmares" about the abuse because her mother "want[ed] to talk to [her] about it to make sure she [knew] everything that went down so she [could] help [her]." (Respondent's Exhibit 1a at 662) During closing argument, defense counsel seized on this statement to argue that the allegations of abuse resulted from the "influence" of Daniels's wife "over th[e] children." (Respondent's Exhibit 1a at 987) Counsel even asserted that Daniels's wife had "create[d] [E.D.'s] repeated nightmares." (Respondent's Exhibit 1a at 990)

Third, the prosecution presented substantial evidence of Daniels's guilt. The victims described in vivid detail the sexual abuse to which Daniels subjected them. And Daniels admitted during the controlled call that E.D. — his "ten-year-old baby" — had performed oral sex on him. (Respondent's Exhibit 1a at 737) Given the strength of the prosecution's case, Daniels cannot show prejudice from the failure to

present his mother's testimony. *See Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278,

1300 n.9 (11th Cir. 2014) ("The overwhelming evidence of [petitioner's] guilt . . .

makes it obvious that [he] cannot show *Strickland* prejudice"); *United States v.*

*Andrews*, 953 F.2d 1312, 1327 (11th Cir. 1992) (rejecting ineffective assistance claim

based on failure to call exculpatory witnesses because, "even had the witnesses'

testimony been presented to the jury, the verdict would have remained the same").

**Grounds Fifteen, Twenty, and Twenty-One:**

Daniels argues that trial counsel failed to adequately oppose the prosecution's

motion to admit child hearsay. (Doc. 21 at 46–47, 55, 58) Florida law "provides a

hearsay exception for the statements of a child victim." *Burgess v. State*, 324 So. 3d

582, 587 (Fla. 1st DCA 2021). "For a hearsay statement to be admissible, the source

of the information through which the statement was reported must be trustworthy

and the time, content, and circumstances of the statement must reflect that the

statement is reliable." *Burgess*, 324 So. 3d at 587. Before trial, the prosecution

moved to admit the victims' interviews with the Child Protection Team.

(Respondent's Exhibit 1 at 52–54) The court held an evidentiary hearing and

reviewed footage of the interviews. (Respondent's Exhibit 1 at 205–315) Counsel

argued that the victims' statements during the interviews were "completely

unreliable" because (1) "several of the alleged acts" were "near impossibilities" as

they occurred in "open area[s] of the house with other people . . . in the house," (2)

the victims' "language" was not "age-appropriate," (3) the victims' "demeanor" was

"unusual" because they acted "nonchalant" and did not "show any emotion," and

(4) E.D. and K.D. used "completely different terms" to describe the abuse. (Respondent's Exhibit 1 at 293–94)

The court granted the motion to admit child hearsay in a written order. (Respondent's Exhibit 1 at 68–70)  The court ruled that the victims' statements were "admissible at trial as internally trustworthy and reliable testimonial hearsay." (Respondent's Exhibit 1 at 70)  The court reasoned (1) that "[e]ach interview was conducted in a child-friendly room" and in "a structured but open-ended and non-leading manner," (2) that the victims understood "the difference between truthful and non-truthful assertions and committed to giving truthful statements," and (3) that the victims' statements were "internally consistent throughout the interview and did not suggest fabrication" or coaching.  (Respondent's Exhibit 1 at 69–70)

Daniels says that counsel should have done more to oppose the introduction of child hearsay.  According to Daniels, counsel could have shown that E.D. "did not know the difference between the truth and a lie" by presenting evidence that she gave "inconsistent stories" to law enforcement "about why she ran away from home three weeks before Daniels's arrest."  (Doc. 21 at 47)  Daniels likewise argues that counsel could have pointed to other "false statements" allegedly made by the victims "in their respective interviews, depositions, and to third parties."  (Doc. 21 at 55–56)  And Daniels faults counsel for not arguing that the court's written order was "deficient" for failing to adequately "consider or address the reliability and trustworthiness of" the victims' statements.  (Doc. 21 at 58)

Daniels misunderstands the highly deferential standard of review required by *Strickland*. Counsel "is not required to present every non-frivolous" argument. *Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013); *see also McNamee v. Sec'y, Fla. Dep't of Corr.*, No. 18-14494-CIV, 2021 WL 1222665, at *9 (S.D. Fla. Feb. 1, 2021) ("A lawyer does not give ineffective assistance by failing to pursue every conceivable argument."), *adopted by* 2021 WL 1215786 (S.D. Fla. Mar. 31, 2021). To the contrary, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Richter*, 562 U.S. at 109. That presumption reflects the principle that "[g]ood advocacy requires winnowing out some arguments . . . to stress others." *Dell*, 710 F.3d at 1281. Thus, "counsel's reliance on particular lines of defense to the exclusion of others . . . is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." *Chandler*, 218 F.3d at 1318.

Daniels makes no such showing. As explained above, counsel vigorously opposed admission of the victims' interviews with the Child Protection Team. Counsel challenged the reliability of the hearsay statements by highlighting the implausibility of some of the alleged acts, by citing discrepancies in the language the victims used to describe the abuse, and by focusing on the victims' allegedly "unusual" demeanor during the interviews. (Respondent's Exhibit 1 at 293–94) Counsel tailored his arguments to the relevant legal standard — that is, the requirement that "the time, content, and circumstances of the statement[s] . . . reflect that the statement[s] [are] reliable." *Burgess*, 324 So. 3d at 587. In these

circumstances, Daniels cannot show that the "chosen course, in itself, was unreasonable." *Chandler*, 218 F.3d at 1318. Thus, the omission of the proposed arguments did not deprive him of the effective assistance of counsel.[11] *See Dell*, 710 F.3d at 1281 ("[I]t is quite difficult to establish that the omission of any particular argument resulted in ineffective assistance . . . .").

**Ground Sixteen:**

Daniels faults trial counsel for failing to call Deputy Christina Poindexter to testify at trial. (Doc. 1 at 49) As noted above, E.D. ran away from home several weeks before Daniels's arrest. Deputy Poindexter retrieved E.D. and took her home. (Doc. 21 at 49) E.D. initially told Deputy Poindexter that a stranger had abducted her while she was walking her dog. She later claimed that she had run away "because of school." (Respondent's Exhibit 1a at 492) Back home, she told her mother that she had run away because Daniels was sexually abusing her.

Daniels contends that Deputy Poindexter could have "seriously undermined E.D.'s credibility with the jury" by testifying about "the inconsistent and false stories E.D. told about why she ran away from home." (Doc. 1 at 178, 182) According to Daniels, E.D.'s "lack of credibility" would have "created . . . a reasonable probability that the jury would have believed [him] instead of E.D." (Doc. 1 at 182)

---

[11] Daniels argues that trial counsel's failure to object to the written order prejudiced him because his proposed arguments were not "preserved . . . for appellate review." (Doc. 21 at 60) But, as explained above, *Strickland* prejudice "focuses on the outcome at trial, not on appeal." *Ramos*, 575 F. App'x at 846.

Daniels is not entitled to relief.  "A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative."  *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002).  "[E]vidence presented in post-conviction proceedings is 'cumulative' or 'largely cumulative' to or 'duplicative' of that presented at trial when it tells a more detailed version of the same story told at trial or provides more or better examples or amplifies the themes presented to the jury."  *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 660 (11th Cir. 2014) (quoting *Holsey v. Warden*, 694 F.3d 1230, 1260–61 (11th Cir. 2012)).

Deputy Poindexter's testimony would have been cumulative of the testimony presented at trial.  E.D. admitted on cross-examination that the "stories" she told law enforcement were "a cover-up of why [she] ran away."  (Respondent's Exhibit 1a at 492)  Therefore, the jury heard the substance of Deputy Poindexter's proposed testimony — that E.D. had lied to law enforcement about why she left home.  At most, Deputy Poindexter could have told "a more detailed version of the same story."  *Tanzi*, 772 F.3d at 660.  Because the proposed testimony would have been cumulative, Daniels fails to show that counsel acted unreasonably in not calling Deputy Poindexter to testify.

**Ground Nineteen:**

Daniels faults trial counsel for failing to impeach K.D. with a false statement she allegedly made to a prosecutor.  (Doc. 1 at 207)  Shortly after Daniels was arrested, K.D. told the prosecutor that Daniels had "used his cell phone to take nude

photos of her." (Doc. 1 at 207)  Based on that statement, law enforcement obtained a search warrant for Daniels's two cell phones. (Doc. 1 at 207)  Neither contained nude photographs of K.D. (Respondent's Exhibit 1 at 408)  Daniels contends that this impeachment evidence "would have shown to the jury K.D.'s propensity to lie about sexual encounters" with him. (Doc. 1 at 208)

This claim is meritless. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. Daniels cannot make this showing.

Competent counsel could have concluded that the proposed impeachment evidence would do more harm than good. The jury did not hear K.D.'s accusation that Daniels had photographed her in the nude. Daniels's proposal would have required counsel to inform the jury of that inflammatory allegation. True, the jury would have learned that law enforcement found no nude photographs on Daniels's cell phones. But the prosecution could have argued that he deleted the photographs before the warrant was executed. Daniels had ample time to complete that task. His wife confronted him with the allegations of sexual abuse at least two weeks before law enforcement became involved. (Respondent's Exhibit 1 at 253) Given the obvious alternative explanation for the missing photographs and the highly

prejudicial nature of K.D.'s accusation, "some reasonable lawyer at the trial" could have decided to refrain from raising the issue. *Dingle v. Sec'y, Dep't of Corr.,* 480 F.3d 1092, 1099 (11th Cir. 2007). Thus, counsel did not provide ineffective assistance by failing to pursue the proposed line of impeachment.

**Ground Twenty-Two:**

Daniels faults trial counsel for failing to present testimony from his wife and K.D.[12] (Doc. 1 at 253) Daniels contends that his wife would have testified (1) that she misled him into believing he was K.D.'s biological father, (2) that David Reece is K.D.'s "real biological father," and (3) that on the night she "left" Daniels over the alleged abuse, she "picked up" a man at a bar, took him to a hotel, and "engaged in unprotected sexual intercourse with [him] in the same room" as the victims. (Doc. 1 at 257) Daniels claims that K.D. would have corroborated the hotel incident and testified that, once her mother told her Daniels was not her biological father, she began to have "unsupervised visitation" with Reece. (Doc. 1 at 256–57) According to Daniels, the proposed testimony would have "established that [his wife] felt a tremendous amount of hostility and hatred toward [him]." (Doc. 1 at 260)

This claim fails. Daniels cannot "establish a reasonable probability that, but for [the failure to present the proposed testimony], the outcome at trial would have been different." *Reed*, 767 F.3d at 1261. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It

---

[12] Also, Daniels asserts that counsel should have presented testimony from David Reece and Ashley Kinnett, but that aspect of his claim was addressed above in the discussion of ground seven.

is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Thus, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the . . . jury." *Strickland*, 466 U.S. at 695. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland*, 466 U.S. at 695–96.

The proposed testimony would have done little to assist Daniels's defense. As explained above, the prosecution presented compelling evidence of Daniels's guilt. The victims described in detail the sexual abuse to which Daniels subjected them. And Daniels admitted during the controlled call that E.D. had performed oral sex on him "one time." (Respondent's Exhibit 1a at 737) Evidence about K.D.'s true paternity would not have undermined the victims' credibility or otherwise weakened the case against Daniels. Likewise, his wife's behavior *after* the allegations came to light would not have cast doubt on the victims' veracity. Because the proposed testimony would have had "an isolated, trivial effect" on "the entire evidentiary picture," Daniels cannot establish prejudice. *Strickland*, 466 U.S. at 696; *see also Bates*, 768 F.3d at 1300 n.9 ("The overwhelming evidence of [petitioner's] guilt . . . makes it obvious that [he] cannot show *Strickland* prejudice").

**Ground Twenty-Three:**

Daniels asserts that trial counsel should have moved to redact "portions" of

the controlled call played to the jury.  (Doc. 21 at 63)  Daniels focuses on his wife's

side of the conversation.  Throughout the call, she accused him of sexually abusing

the victims.  For example, she said that their wedding vows "didn't say for better or

for worse or if you molest my f*cking children, you sick motherf*cker."

(Respondent's Exhibit 1a at 747)  At another point she said, "I haven't slept in three

days, I haven't ate [sic] in six days because you molested my f*cking children."

(Respondent's Exhibit 1a at 741)  Daniels argues that counsel should have moved to

redact these and other statements on the grounds that they were "not relevant,"

"hearsay," and unfairly prejudicial.  (Doc. 1 at 264–78)

Counsel was not deficient for failing to raise this meritless argument.  *See*

*Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a

meritless claim.").  Daniels's statements on the call were admissible as those of a

party-opponent.  *See State v. Elkin*, 595 So. 2d 119, 120 (Fla. 3d DCA 1992)

("Relevant, out-of-court statements of a party opponent . . . are admissible in

evidence . . . and thus are an exception to the hearsay rule.").  His wife's statements

were admissible "because they were not admitted to prove the truth of the matters

asserted, but to give context to the admissible statements."  *United States v. Cooper*,

926 F.3d 718, 732 (11th Cir. 2019); *see also United States v. Henderson*, 626 F.3d 326,

337 (6th Cir. 2010) ("[T]he statements made by others [during a conversation with

the defendant] were not admitted to show the truth of the matters asserted, but to

provide context for [the defendant's] admissions."). Accordingly, any objection to these statements would have failed.

Daniels points to other allegedly objectionable statements. He notes that his wife accused him during the call of "beating the sh*t out of [her]" — an accusation he denied. (Respondent's Exhibit 1a at 736) Later, she asked, "What about the next little girl? How many of their friends have you touched?" (Respondent's Exhibit 1a at 736) Again, Daniels denied molesting the victims' friends. At another point she said, "Jason, you've been controlling me since you beat me when I was pregnant." (Respondent's Exhibit 1a at 742–43) Daniels now faults counsel for not moving to redact these statements because they were improper "evidence of prior bad acts." (*E.g.*, Doc. 1 at 273–74)

Even assuming counsel performed deficiently, Daniels is entitled to no relief because he cannot show prejudice. The evidentiary value of the controlled call lay in Daniels's admissions, not his wife's accusations. During closing argument, the prosecution did not cite the accusations of spousal abuse or molestation of other children. Instead, the prosecution focused on Daniels's highly damaging admissions (Respondent's Exhibit 1a at 972–73):

> But when he's confronted with why on earth would you think it was okay to have your 10-year-old daughter, obviously talking about [E.D.] — and pardon my language — but she said, give you a blowjob? His response: I don't know. I don't know what the "F" is wrong with me. I can't even explain myself.

> How many times have you done this to [E.D.]? Just the one. Not no, not never.

The accusations of spousal abuse and molestation of other children were undoubtedly inflammatory.  But "a court hearing an ineffectiveness claim must consider the totality of the evidence before the . . . jury."  *Strickland*, 466 U.S. at 695. The jury in this case heard that Daniels repeatedly subjected the victims to sexual abuse.  For example, E.D. described an incident in which Daniels anally raped her in a bathroom:  "[T]he first time he did it, he went really far up, and I started crying. My face went pale white, because I could just see my face in the mirror after he was done."  (Respondent's Exhibit 1a at 681)  These graphic descriptions likely had far greater impact on the jury's assessment of Daniels's "character" than his wife's stray allegations about domestic violence and potential abuse of other children.  (Doc. 1 at 279)  Given the nature of the charged conduct, Daniels cannot show a reasonable probability that the jury would have reached a different verdict had counsel successfully moved to redact the wife's accusations.

**Grounds Twenty-Four and Twenty-Five:**

Daniels asserts that trial counsel failed to adequately challenge the testimony of the nurse practitioner who evaluated E.D.  (Doc. 21 at 64–68)  As explained above, the nurse testified that she found no "physical abnormalities" on E.D. (Respondent's Exhibit 1a at 914)  She stated, however, that her "findings . . . were positive for sexual abuse" based on "[E.D.'s] history."  (Respondent's Exhibit 1a at 912–13)  That "history" came from E.D.'s mother, who told the nurse that E.D. had been sexually abused.  (Respondent's Exhibit 1a at 913)  On cross-examination, the nurse admitted that her finding of "positive by history" was "not a medical

determination based on [her] physical examination." (Respondent's Exhibit 1a at 916)  Instead, the finding rested solely on what she had been "told" about the abuse. (Respondent's Exhibit 1a at 916)

Daniels argues that counsel should have hired an expert to testify that nurse practitioners cannot "find that a minor child suffered sexual abuse based solely on an allegation . . . [without] any physical findings of sexual abuse." (Doc. 21 at 64)  Also, Daniels asserts that counsel should have argued that the nurse's testimony was inadmissible under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (Doc. 21 at 66)

This claim fails for lack of prejudice.  Daniels complains that the nurse used her "impressive credentials" to opine that E.D.'s "account of the sexual abuse was truthful." (Doc. 21 at 65)  But counsel effectively impeached the nurse on this issue during cross-examination.  She admitted that her finding of "positive by history" was "not a medical determination based on [her] physical examination," and that she was simply relaying what K.D.'s mother had told her. (Respondent's Exhibit 1a at 916)  During closing argument, counsel used these admissions to attack the nurse's testimony (Respondent's Exhibit 1a at 994):

> For [the nurse] to come in here and say that the evidence is consistent with sexual abuse by history is outrageous. She's saying they told me they were sexually abused, and therefore, it's consistent.  No.  It's outrageous for her to be so misleading when she's a nurse and her job is to do a physical examination, and the result of that was nothing. For her to come in here and mislead you is inappropriate.

Because counsel persuasively rebutted the challenged testimony, the nurse's

statement likely had "an isolated, trivial effect" on "the entire evidentiary picture." *Strickland*, 466 U.S. at 696.  And even without the nurse's testimony, the prosecution presented substantial evidence of Daniels's guilt, including his admission that E.D. had performed oral sex on him.  Thus, Daniels cannot "establish a reasonable probability that, but for [the failure to hire an expert and raise the *Daubert* argument], the outcome at trial would have been different."  *Reed*, 767 F.3d at 1261.

**Ground Twenty-Six:**

Daniels faults trial counsel for failing to obtain (1) the DCF report of the interview with Michael Prevatt (the victims' grandfather) and (2) the "recordings" and "evidence" that Prevatt allegedly provided to law enforcement.  (Doc. 21 at 68) As explained above, eight months after Daniels's arrest, DCF investigated allegations that Prevatt was sexually abusing E.D. and K.D.  (Doc. 1 at 149)  The report of DCF's interview with Prevatt states that he "believe[d] he [was] being accused of sex abuse because he was the one who turned Jason Daniels in.  He had the recordings and provided evidence to [law enforcement]."  (Doc. 1-6 at 6)  The report does not describe the "recordings" or "evidence" that Prevatt allegedly gave to law enforcement.

Daniels asserts that these items would have "decisive[ly]" affected his defense. (Doc. 21 at 70)  First, Daniels argues that the DCF report "directly contradicts the testimony of [his wife] that she was the first person who told law enforcement about" the sexual abuse.  (Doc. 21 at 71)  Second, Daniels contends that the report, along with Prevatt's "recordings" and "evidence," show that his wife conspired with law

enforcement to create a "fake" controlled call.  (Doc. 1 at 314)

Daniels cannot show prejudice from the failure to obtain this evidence.  The "impeachment value" of the DCF report was "weak."  *Miller v. Sec'y, Dep't of Corr.*, No. 8:17-cv-2815-TPB-AEP, 2020 WL 7318967, at *28 (M.D. Fla. Dec. 11, 2020), *aff'd*, No. 21-10077, 2022 WL 3452468 (11th Cir. Aug. 18, 2022).  Whether Daniels's wife or Prevatt reported him to law enforcement is a minor, legally irrelevant point.  Thus, the failure to present this impeachment evidence did not prejudice Daniels.  *See Bradley v. Sec'y, Fla. Dep't of Corr.*, No. 17-12926-K, 2018 WL 3238836, at *9 (11th Cir. Apr. 2, 2018) ("The fact that trial counsel may not have highlighted every inconsistent minor detail in the victim's testimony did not [lead to] a reasonable probability of changing the trial's outcome.").

Furthermore, Daniels merely speculates that the DCF report — along with Prevatt's "recordings" and "evidence" — show that the controlled call was "fake." (Doc. 1 at 314)  The record does not disclose the nature of the "recordings" or "evidence" Prevatt provided to law enforcement.  Daniels's speculation that these items would aid his defense is insufficient to establish *Strickland* prejudice.  *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (noting that "speculation that the missing [evidence] would have been helpful" is "insufficient to carry the burden of a habeas corpus petitioner"); *Fuqua v. Sec'y, Dep't of Corr.*, 409 F. App'x 243, 246 (11th Cir. 2010) ("Federal habeas relief cannot follow . . . speculation [about the content of testimony].").

## VI. <u>APPELLATE-LEVEL INEFFECTIVE ASSISTANCE</u>

In grounds seventeen and eighteen, Daniels contends that appellate counsel provided ineffective assistance. (Doc. 21 at 50–54) First, Daniels faults counsel for failing to argue on direct appeal that the trial court committed "fundamental error" by "waiting until after closing argument[ ] . . . to instruct the jury that [simple] battery was a lesser included offense." (Doc. 1 at 185) Second, Daniels faults counsel for failing to argue on direct appeal that the admission of the nurse practitioner's testimony was "fundamental error." (Doc. 21 at 52–53) The state appellate court rejected Daniels's ineffective assistance claims in an unelaborated decision. (Respondent's Exhibit 21)

These claims lack merit.[13] At trial, Daniels objected to neither the timing of the simple battery instruction nor the admission of the nurse's testimony. Consequently, the claims for ineffective assistance of appellate counsel turn on whether the alleged errors were "fundamental" under Florida law. If the alleged errors were "not fundamental, then [Daniels's] appellate counsel would have been procedurally barred from raising [them] on appeal, and so he could not have been ineffective for failing to raise [them]." *Scott v. Sec'y, Dep't of Corr.*, 857 F. App'x 548, 551 (11th Cir. 2021).

By rejecting Daniels's ineffective assistance claims in an unelaborated order, the appellate court "implicitly" determined that the timing of the instruction and the

---

[13] The respondent argues that grounds seventeen and eighteen are procedurally defaulted, but "a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event." *Dallas*, 964 F.3d at 1307. The appellate court's unexplained rejection of Daniels's claims is "presumed" to rest "on the merits." *Richter*, 562 U.S. at 99.

admission of the nurse's testimony were not fundamentally erroneous. *See Pinkney*, 876 F.3d at 1297 (holding that, "[b]ecause the Florida Second District Court of Appeal denied [petitioner's] state habeas petition" without explanation, "the Florida court has already determined, albeit implicitly, that the error was not fundamental error"). "[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is." *Pinkney*, 876 F.3d at 1299. Therefore, the district court "must defer to the [state] court's underlying determination[ ]" that the trial court did not commit fundamental error. *Pinkney*, 876 F.3d at 1297–98. Because the timing of the instructions and the admission of the nurse's testimony did not constitute fundamental error, "appellate counsel would have been procedurally barred from [raising these issues] on appeal." *Scott*, 857 F. App'x at 551. Counsel "will not be held to have performed deficiently" where, as here, he "fail[s] to perform a futile act, one that would not have gotten his client any relief." *Pinkney*, 876 F.3d at 1297.

## VII. CUMULATIVE ERROR

In ground twenty-seven, Daniels contends that the "cumulative effect" of the errors alleged in the application deprived him of a "fundamentally fair trial." (Doc. 1 at 320) "Under the cumulative error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative error claim "must fail," however, where none of the "individual claims of error" has "any merit." *Morris v.*

*Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Because each individual claim of error lacks merit, Daniels cannot show cumulative prejudicial effect.

## VIII. <u>CONCLUSION</u>

Daniels's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The respondent's request to dismiss the Attorney General from this action (Doc. 26 at 2) is **GRANTED**.[14] The clerk must enter a judgment against Daniels and **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Daniels fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate both the merits of the grounds and the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Daniels must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on December 31, 2024.



STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[14] When prisoners challenge their physical confinement, "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Because the proper respondent is the Secretary of the Florida Department of Corrections, the Florida Attorney General is dismissed from this case.